UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MARTA M. DONIS, on behalf of herself and
on behalf of all other persons similarly
situated,

                              Plaintiff,

         -against-

VISUAL CITI INC.
and FAZLE ABBAS DEVJIYANI,

                         Defendants.

-------------------------------------------------------------X

Case No. 17-00837(JFB)(AYS)

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Marta M. Donis ("Plaintiff"), on behalf of herself and the "Class Members" (as that term is defined in Section 1.6 below), Defendant Visual Citi, Inc. ("Visual Citi"), Defendant Fazle Abbas Devjiyani ("Devjiyani", together with Visual Citi, "Defendants", collectively with Defendant and Plaintiff the "Parties"), through their respective counsel, hereby enter into this Settlement and Release Agreement (the "Agreement") to resolve all claims which were asserted or could have been asserted against Defendants by Plaintiff and the Class Members in the Litigation (as that term is defined in below).

## RECITALS

A.    WHEREAS, Plaintiff filed a proposed class action Complaint on February 14, 2017 (the "Complaint") in the above-captioned action (the "Litigation") alleging that Plaintiff and Class Members were not paid Spread of Hours pay for work days in excess of ten hours under the New York Labor Law and its implementing regulations;

B.    WHEREAS, the Complaint asserted in the Third Claim for Relief a class action claim under the New York Labor Law ("NYLL") and sought recovery of, among other things, unpaid wages, liquidated damages, statutory interest, and attorneys' fees and costs;

C.    WHEREAS, the Parties participated in an all-day mediation on November 28, 2017 with the assistance of an experienced mediator, Alfred Felui, Esq., of Feliu Neutral Services, LLC, which mediation was successful;

D.    WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Plaintiff and Class Members, and that would not occur for several years, Class Counsel is

1

satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members; and,

E.     WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiff, have denied and continue to deny that Defendants are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint, and have denied and continue to deny that the claims asserted in the Complaint are appropriate for class treatment, except for settlement purposes only;

F.     NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.1     **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2     **Authorized Claimant.** "Authorized Claimant(s)" means a Class Member or the authorized legal representative of such Class Member, who does not opt-out of this Agreement and therefore is entitled to receive a Settlement Check.

1.3     **Application for Final Approval.** "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.6, seeking approval of the settlement.

1.4     **Bar Date.** "Bar Date" means the date as set by the Court by which any Class Member who wishes to opt out to this Agreement must timely file such paperwork pursuant to Section 2.4(D).

1.5     **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" shall mean the Law Office of Peter Romero, PLLC.

1.6     **Class Members.** "Class Members" shall mean individuals who worked as hourly-paid employees at Visual Citi who, pursuant to the amount of their hourly wage rate, were entitled to Spread of Hours pay under the New York Labor Law from February 14, 2011 through the date of execution of the Final Settlement Agreement and who, on any given day, worked a work day that exceeded ten hours from its start to its finish (inclusive of meal and other breaks and non-work time);

1.7     **Class List.** "Class List" means a list of all Class Members, identified by name and address, contained in a confidential document that Defendants shall maintain. The Class List is to be used to effectuate settlement.

1.8     **Costs and Fees.** "Costs and Fees" means any and all fees, costs, and expenses associated with this Litigation, including without limitation attorneys' fees, filing fees, expenses and professional fees, accountant fees and costs, and Service Awards, except excluding Defendants' attorneys' fees and costs.

1.9     **Court.** "Court" shall mean the United States District Court for the Eastern District of New York, before the Honorable District Judge Joseph F. Bianco.

1.10 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.11 **Defendants.** Defendants" shall mean Visual Citi and Devjiyani.

1.12 **Defendants' Counsel.** "Defendants' Counsel" means Paul J. Siegel, Esq., and Timothy Domanick, Esq., of Jackson Lewis, P.C., 58 S. Service Road, Suite 250, Melville, NY 11747.

1.13 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.14 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.15 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Costs and Fees, and dismissing the Litigation with prejudice.

1.16 **Final Effective Date.** Provided no appeal of the Final Approval Order timely is filed, the "Final Effective Date" means 30 days after the Court has entered a Final Approval Order approving this Agreement as provided in Section 2.6. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and, (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form entered by the Court.

1.17 **Gross Settlement Fund.** "Gross Settlement Fund" refers to One Hundred Twenty-Seven Thousand, Three Hundred and Thirty Dollars and No Cents ($127,330.00), the maximum amount Visual Citi has agreed to pay, exclusive of Employer Payroll Taxes.

1.18 **Named Plaintiff.** "Named Plaintiff" refers to Marta M. Donis.

1.19 **Net Settlement Amount.** "Net Settlement Amount" means the amounts paid to Authorized Claimants, and Costs and Fees. "Net Settlement Fund" means the Gross Settlement Fund minus the maximum attorneys' fees payment of $42,443.33, and all other Costs and Fees besides attorneys' fees.

1.20 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

1.21 **Objector.** "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.22 **Opt-out Statement.** "Opt-out Statement" is a written, signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.23 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Class pursuant to F.R.C.P. 23 solely for purposes of effectuating the Agreement; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) appointing Class Counsel as defined above; (iv) directing the manner and timing of providing Notice to the Class Members; and (v) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of the Fairness Hearing.

1.24 **Released Class Claims.** "Released Class Claims" means all wage and hour claims specifically related to employment of Class Members with Defendants that were or could have been asserted under the New York Labor Law by or on behalf of Class Members, excluding Class Members who opt-out of the settlement, for the period February 14, 2011 through the date of the Preliminary Approval Order. The Released Class Claims include all claims specifically related to employment of Class Members under the New York Labor Law, including but not limited to claims for unpaid wages, spread-of-hours, failure to provide proper wage notices and/or statements, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages and attorneys' fees, expenses, disbursements and Costs and Fees related to such claims.

1.25 **Releasees.** "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, predecessors, successors and all other related entities, including, but not limited to, all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.26 **Relevant Period.** "Relevant Period" means February 14, 2011 through the date the Court approves this Agreement.

1.27 **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement – or otherwise referred to as their Individual Net Amount.

2. PROCEDURAL ISSUES

2.1 **Settlement Class.** For purposes of settlement only, the Parties agree to class certification pursuant to F.R.C.P. 23 to include all Class Members.

2.2 **Preliminary Approval Motion.**

A. Within 15 days of execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (1) the proposed Notice attached hereto as Exhibit A (2) the proposed Preliminary Approval Order, which shall be drafted by Class Counsel and approved by Defendants, (3) an executed version of this Agreement, and (4) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class under F.R.C.P. 23 for settlement purposes only, and preliminarily approving the Agreement.

4

Defendants may review the terms of the Preliminary Approval Motion and attachments to ensure they are consistent with this Agreement prior to it being filed. Defendants may also review the proposed Preliminary Approval Order prior to the agreement being executed, and any other documents filed in connection with the preliminary approval motion at least three days prior to filing. The Preliminary Approval Motion also will seek the setting of a date for individuals to opt-out of this Agreement and/or provide objections to this Agreement, which date will be thirty (30) days from the initial mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

B.    Plaintiff will file the Motion for Preliminary Approval as "unopposed."

**2.3    Notice to Class Members**

(A)    **Class List.** Within fifteen (15) days of the Preliminary Approval Order being executed by the Court, Defendants' Counsel shall provide Class Counsel with the Class List. All information provided regarding the Class Members will be treated as confidential information by Class Counsel and may not be used by Class Counsel for any purpose other than to effectuate the terms of settlement. Class Counsel shall not include a list of Authorized Claimants in any affidavit filed in support of approval of this settlement.

(B)    **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt-out, and/or appear at the Fairness Hearing. Within forty (40) days of the entry of the Preliminary Approval Order or as otherwise ordered by the Court, Visual Citi shall mail to all Class Members, via First Class United States Mail, the Court–approved Notices – as authorized by the Court in the Preliminary Approval Order.

(C)    **Re-mailing.** In the event that a Notice mailed to a Class Member is returned as undeliverable, Visual Citi shall take all reasonable steps to obtain the correct address of such Class Member, and shall attempt a re-mailing provided it obtains a more recent address. Visual Citi shall also mail a Notice to any Class Member who contacts Visual Citi or Class Counsel during the time period between the initial mailing of the Class Notice and the Bar Date and requests a Notice. Visual Citi will notify Class Counsel and Defendants' Counsel of the number of Notices sent to a Class Member that are returned as undeliverable, as well as the number of any such Notices returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(D)    **Bar Date.** Class Members that do not opt-out of this Agreement will be deemed Authorized Claimants. To be effective for the purposes of opting-out of this Agreement, said opt-out must be post-marked as mailed to Visual Citi by the Bar Date and include a signature in the designated area. The Bar Date shall be thirty (30) days from the date of the initial mailing or as otherwise set by the Court. To the extent that the envelope does not contain a post-mark, the date that Visual Citi stamps the envelope "received" shall apply.

(E)     For purposes of this Agreement, the Named Plaintiff is deemed to be an Authorized Claimant.

**2.4    Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to Visual Citi that states he or she is opting out of the Settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Visual Citi wage and hour settlement." ("Opt-out Statement").   To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C)     Visual Citi will stamp the received date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt. Visual Citi will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as Visual Citi is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit a timely unequivocal Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order in this case, and have any Released Class Claims released and dismissed with prejudice. Defendants shall fund only the amounts allocated to each Authorized Claimant as set forth in this Agreement. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who opt-out of this Agreement. For purposes of this Agreement, the Named Plaintiff is deemed to be an Authorized Claimant.

**2.5    Objections to Settlement.**

(A)     Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing first must do so in writing.  To be considered, such statement must be mailed to Visual Citi via First-Class United States Mail post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation.   The statement must also include the name, address and telephone numbers for the Class Member making the objection. Visual Citi will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the notice mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than seven (7) days after receipt of the objection.

(B)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objection(s) at any time.

(C)     The Parties may file with the Court written responses to any filed objections no later than seven (7) days before the Fairness Hearing.

2.6     **Fairness Hearing and Application for Final Approval and Dismissal.**

(A)     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain an application for attorneys' fees, and supporting affidavit and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Approval Order. All documents shall be provided to Defendants' Counsel at least 10 days prior to the Final Fairness Hearing for their review and approval.

(B)     At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) certify the Class for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) order Visual Citi to distribute Settlement Checks to the Authorized Claimants, including Service Awards, if any, to be paid to certain Class Members as described in this Agreement; (4) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation, including the claims of all Class Members who did not opt-out; (5) order entry of the Final Approval Order in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)     The Final Approval Order will order Visual Citi to (1) provide verification that it has distributed the Settlement Checks and made proper withholdings, and (2) retain copies of all of the endorsed Settlement Checks.

2.7     **Termination of Agreement**

(A)     **Grounds for Settlement Termination.** Visual Citi has the right to revoke this Agreement in the event that 10% or more of the Class Members file opt out exclusion forms during the period set by the Court for the submission of opt-out forms. Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order <u>unless</u> the Court declines to enter the Preliminary Approval Order or Final Approval Order due solely to the amount of attorneys' fees sought by Class Counsel. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, and if the Court approves the settlement payment amount allocated to the Authorized Claimants as set forth in this Agreement, but not the application for attorneys' fees, (i) the Agreement may not be terminated or revoked, and (ii) any Court-required reduction of the attorneys' fees will be reallocated to the Class. The Defendants may not oppose (a) an application for attorneys' fees of up to $42,443.33, to be paid out of the Gross Settlement Fund, (b) a

7

motion for reconsideration of such application, and/or (c) an appeal regarding Class Counsel's application for attorneys' fees.

(B)     **Procedures for Termination.** To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail.

(C)     **Effect of Termination.** Termination shall have the following effects:

1.      The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

2.      Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, or Class Counsel.

3.      If the Court grants preliminary approval, but not final approval, Visual Citi will provide a Court approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by Visual Citi via First Class United States Mail.

4.      The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

5.      In the event that the case is not settled finally and the settlement approved, the Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the entering of this Agreement. Defendants retain the right to contest whether the Litigation should be maintained as a class, and to contest the merits of the claims being asserted in the Litigation. The Preliminary Order approving the settlement and certifying the class for settlement purposes only shall be null and void and the case may only be certified if Plaintiff is granted class certification after full briefing on a motion for such certification.

**3.     SETTLEMENT TERMS**

**3.1    Settlement Amount.**

(A)     Defendants agree to pay a maximum Settlement Amount of One Hundred Twenty-Seven Thousand, Three Hundred and Thirty Dollars and No Cents ($127,330.00), which shall be used for allocation and calculation purposes to fully resolve and satisfy (1) any claim for Costs and Fees as approved by the Court, and (2) any and all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein.

(B)  **Default.** A default under this Agreement shall be considered to have occurred if Visual Citi fails to make any scheduled payment within fifteen (15) business days of the due date for such payment pursuant to Section 3.1 ("Default"). If the Default is not timely cured within that fifteen (15) day period, Visual Citi shall reimburse all reasonable fees and costs associated with Class Counsel's recovery of the scheduled payment, as awarded by the Court.

(C)  **Reversion.** Any uncashed Settlement Checks or Service Awards and all amounts remaining three months after the mailing of the last Settlement Checks will revert to Defendants. For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

## 3.2  Mailing of Settlement Checks

(A)  Visual Citi shall mail the Settlement Checks, and Class Counsels' checks to pay for all Court-approved Costs and Fees as reflected in Section 3.1.

(B)  Visual Citi will distribute the Settlement Checks to the participating Class Members and Class Counsel in two equal payments on the following schedule: the first payment will be made within thirty (30) days of the Effective date, or March 1, 2018, whichever is later; and, the second payment will be made on or before ninety (90) days from the date of the first payment.

## 3.3  Attorneys' Fees, Expenses and Costs.

(A)  At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than Forty-Two Thousand Four Hundred Forty-Three Dollars and Thirty-Three Cents ($42,443.33). Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)  The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)  The attorneys' fees, expenses and costs shall be paid from at the time the payments to Authorized Class Claimants are made.

3.4   **Service Award to Named Plaintiff.**

    (A)   In return for services rendered to the Class Members, Authorized Claimants and/or the Settlement Class, the Named Plaintiff as defined above will apply to the Court to receive no more than Two Thousand Five Hundred Dollars ($2,500.00) as a Service Award from the Gross Settlement Fund. Service Awards shall be reported on Form 1099.

    (B)   The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement. Defendants may not oppose Named Plaintiff's application for Service Awards.

3.5   **Net Settlement Fund and Allocation to Authorized Claimants.**

Authorized Claimant's individual Settlement Check amounts shall be computed according to the following method:

    A.   Each Authorized Claimant's proportionate share of the Net Settlement Fund shall be determined by the Parties pursuant to the formula set forth below: the Parties will review all applicable wage and hour records to calculate the amount of Spread of Hours Pay each Class Member did not receive during the Relevant Period. That amount will be paid, along with their *pro rata* share of liquidated damages and interest, such that the amount to be paid will equal the Net Settlement Fund.

    B.   Defendants will pay solely the employer's share of taxes in addition to the Net Settlement Fund, Authorized Claimants shall pay their own share of taxes and contributions that are due and shall provide tax forms deemed necessary by Visual Citi. Any portion of the taxes on the unclaimed money paid by Visual Citi will revert back to Defendants.

3.6   **Tax Characterization.**

    (A)   For tax purposes, 50% of payments to Authorized Claimants pursuant to Section 3.5 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and interest.

    (B)   Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.3 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment.

10

(C)    The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Class Members shall not be Defendants' responsibility.

## 4.    RELEASE

### 4.1    Release of Claims.

(A)    By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, under state laws or common law by and on behalf of the Class Members in the Litigation.   The Released Claims include all statutory or common law claims under New York state law for unpaid wages, spread-of-hours, failure to provide proper wage notices and/or statements, any related wage and hour claims, interest on such claims, and attorneys' fees and costs related to such claims through the earlier of: 1) the date of the Preliminary Approval Order and 2) the date sixty (60) days after the filing of the motion for preliminary approval (provided such approval is granted).

For Named Plaintiff, Released Claims shall also include all claims under the Fair Labor Standards Act for minimum or overtime wages, claims for liquidated damages, interest, attorneys' fees and costs.

(B)    Except as provided in this Agreement, upon payment of the Attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiff, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

### 4.2    Denial of Liability & Confidentiality

(A)    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an

11

admission that a class should be certified for any purpose in this case other than settlement purposes.

(B)    Plaintiff shall not make any statement relative to this settlement. In response to inquiries regarding the Litigation, Plaintiff shall state only "the matter has been resolved." Class Counsel has agreed to not use the Litigation as a marketing tool or for promotional purposes in any manner.

(C)    Plaintiff agrees the terms of the Agreement will not be publicized.

(D)    Class Members shall be advised that the terms of the Agreement shall not be publicized.

## 5.    INTERPRETATION AND ENFORCEMENT

5.1    **Cooperation between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2    **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action. .

5.3    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8    **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.9    **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11   **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.12   **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.13   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: December __, 2017                           VISUAL CITI, INC.

                                                   By: _____

                                                   Its: _Fazle Abbas Devjiyani_
                                                       12/21/2017

13

Dated: December 15, 2017

*marta cu. Donis signar*
Marta Donis

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF Suffolk )

        On the 15 day of December, 2017, before me, the undersigned notary, Marta Donis personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and Release. Ms. Donis advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive the above-referenced claims against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

```
IZABELA OSTAPOWICZ
Notary Public - State of New York
NO. 01OS6148052
Qualified in Suffolk County
My Commission Expires Jun 19, 2018
```

*marta M. Donis: s. M.)*
Signature and Office of individual
taking acknowledgment

*Izabela Ostapowicz*
*notary public*

4851-7526-7160, v. 1

14